# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:11CR230 |
| Plaintiff, ) | |
| ) | |
| vs. ) | FINDINGS AND |
| ) | |
| SOLEDAD VILLALBA-CABELLO, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

    This matter is before the court on the motions of defendant Soledad Villalba-Cabello (Villalba-Cabello) to dismiss (Filing No. 20) and to suppress (Filing No. 22). Villalba-Cabello is charged in the Indictment with the use on June 1, 2009, of an identification document not lawfully issued to her (Count I) in violation of 18 U.S.C. § 1546(b); the use on January 25, 2010, of an identification document not lawfully issued to her (Count II) in violation of 18 U.S.C. § 1546(b); falsely representing herself to be a U.S. citizen on June 1, 2009, (Count III) in violation of 18 U.S.C. § 911; falsely representing herself to be a U.S. citizen on January 25, 2010, (Count IV) in violation of 18 U.S.C. § 911; the false representation of a Social Security number on June 1, 2009, (Count V) in violation of 42 U.S.C. § 408; and the false representation of a Social Security number on January 25, 2010, (Count VI) in violation of 42 U.S.C. § 408. **See** Filing No. 13 - Indictment.

    An evidentiary hearing was held on Villalba-Cabello's motions on October 20, 2011. Villalba-Cabello was present for the hearing along with her counsel, Bassel F. El-Kasaby. The United States was represented by Assistant U.S. Attorney Christopher L. Ferretti. Laura Garcia-Hein, a certified interpreter in the Spanish language, served as the interpreter. During the hearing, the court heard the testimony of U.S. Immigration and Customs Enforcement (ICE) Deportation Officer Adam Minze (Officer Minze). The court received into evidence Exhibit 1 - Statement of Rights. An amended transcript (TR.) of the hearing was prepared and filed on October 29, 2011 (Filing No. 40).

## FINDINGS OF FACT

In early May 2011, Officer Minze received information that Katana Summit Corporation (Katana Summit) in Columbus, Nebraska, had received an anonymous telephone call that one of the employees working at its facility in Columbus under the name of Carmen Robles was not who she purported to be (TR. 3).  Officer Minze checked various ICE indices and the Social Security database (TR. 3).  He discovered that the Social Security number associated with the name Carmen Robles had earned wages in Columbus, Nebraska; Chicago, Illinois; and New York, New York (TR. 3).  Officer Minze arranged with Angie Wright (Ms. Wright), Human Resources Director at Katana Summit, to interview Carmen Robles at the Columbus facility (TR. 4).  On June 9, 2011, Officer Minze together with Deportation Officers Linda Minze, Jason Meyer, and Jerry Lenderts, drove to Columbus, Nebraska, to meet with Carmen Robles (TR. 4-5).  Officer Minze testified that multiple officers go on trips outside the Omaha area for officer safety if there has to be some additional investigation completed after arrival (TR. 5).

When the officers arrived at Katana Summit between 9:00 and 10:00 a.m. on June 8, 2011, they met with Ms. Wright (TR. 4-5).  Ms. Wright notified the floor foreman to have Carmen Robles report to a conference room used for training (TR. 5).  The training room had three or four rows of long tables and chairs which would accommodate 50 to 60 people (TR. 6).  At the front of the room was a podium and two doors, one leading to the shop floor and the other leading to the offices (TR. 6).  The defendant came into the room and was seated at the first table across from Officer Minze (TR. 6).  The rest of the ICE officers were seated at tables in the back of the room (TR. 6).  The officers were dressed in blue jeans and shirts with their weapons concealed (TR. 7).  The officers wore no markings indicating they were ICE officers (TR. 7).  When the defendant entered the room, Officer Minze showed his identification, stated he was an officer with ICE, informed the defendant that he was conducting an investigation into her identity, and asked if she would answer his questions (TR. 7).  The defendant stated she would and appeared calm and confident (TR. 7).

Officer Minze asked the defendant her name and where she was from (TR. 8).  The defendant replied she was Carmen Robles from Puerto Rico (TR. 8).  Officer Minze asked

the defendant what barrio she was from in Puerto Rico and whether she had ever been in trouble with the police (TR. 8).  The defendant stated she had been in trouble in Columbus because someone in New York had received a traffic ticket and she was questioned in Columbus about the ticket (TR. 8).  The Columbus police released her after she told them someone must have used her name in New York (TR. 8).  Officer Minze was not convinced the defendant was Carmen Robles by the way she hesitated when answering some of his questions and from her dialect (TR. 8).  From his many years in ICE and his experience talking with various persons, Agent Minze was suspicious that the defendant's dialect was not Puerto Rican (TR. 8).  Agent Minze called Homeland Security Special Agent Rey Hernandez (Agent Hernandez) in Omaha (TR. 10).  Agent Hernandez is from Puerto Rico (TR. 10).  Agent Minze handed the cell phone to the defendant so that she could talk with Agent Hernandez (TR. 10).  After a few minutes of conversation, the defendant handed the cell phone back to Officer Minze, and Agent Hernandez told Officer Minze the defendant was not from Puerto Rico and that she was from Mexico (TR. 10).  Officer Minze then asked the defendant if she was from Mexico, and she stated she was (TR. 10-11).  Officer Minze advised the defendant of her **Miranda**[1] rights and she declined to talk with Agent Minze (TR. 11; Exhibit 1).  The defendant was arrested and transported back to the Omaha office (TR. 11).

     During the transport to the Omaha office, Officer Minze conducted a health and welfare questionnaire, asking if the defendant had any children at home and who would take care of those children (TR. 11).  The defendant stated her ex-husband could take care of her children (TR. 11).  Officer Minze told her she could make a phone call when they got back to the Omaha office (TR. 11).  Once back at the office, the defendant was allowed to make a phone call to her ex-husband and he agreed to take care of the children (TR. 11).  Later that day, Officer Minze called the ex-husband to see if the children were being taken care of and during that call Officer Minze asked the ex-husband for the defendant's true name (TR. 11).  The husband told Officer Minze the defendant's true name was Soledad Villalba-Cabello, gave her date of birth, and stated she was from Mexico (TR. 11-12).

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

While at the ICE facility in Omaha, the defendant's fingerprints were taken and processed (TR. 12). From the fingerprints, Officer Minze learned Villalba-Cabello had three or four prior arrests in Omaha but nothing appeared in the ICE databases (TR. 13). Villalba-Cabello was placed in immigration proceedings and a $15,000.00 immigration bond was set (TR. 13). After a hearing later in May 2011, her bond was lowered to $5,000.00 (TR. 13). On June 23, 2011, information about this case was forwarded to the U.S. Attorney's office for prosecution (TR. 19). On July 1, 2011, while still in ICE custody, a criminal complaint was filed charging Villalba-Cabello with a violation of 18 U.S.C. § 1546(b), the false use of a Social Security number and use of a false Nebraska Identification Card (TR. 14; Filing No. 1). Villalba-Cabello appeared before a magistrate judge on July 5, 2011 (Filing No. 7).

## LEGAL ANALYSIS

### A. Motion to Dismiss

Villalba-Cabello seeks to dismiss the Indictment on the basis she was detained from June 8, 2011, to July 5, 2011, without having been brought before a magistrate judge in violation of 8 U.S.C. § 1357(a)(4). 8 U.S.C. § 1357 titled "Powers of immigration officers and employees" provides in relevant part:

> (a)   Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant–
>
> * * *
>
> (2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States;
>
> * * *

> (4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States.

8 U.S.C. § 1357. Villalba-Cabello argues Officer Minze arrested her in Columbus, Nebraska, on June 8, 2011, and she was not brought before a magistrate judge on the criminal charges until July 5, 2011. Furthermore, pursuant to Fed. R. Civ. P. 5(a), Villalba-Cabello claims her Fourth Amendment rights were violated in the delay. As a sanction for such delay, Villalba-Cabello urges the dismissal of the Indictment. Villalba-Cabello's reliance upon Section 1357 is misplaced as is her Fourth Amendment argument.

Villalba-Cabello was arrested on immigration charges and brought before an ICE examining officer on the same day she was arrested by Officer Minze. She was placed in immigration proceedings with a bond of $15,000.00 on June 8, 2011 (TR. 13). Subsequently, and prior to July 1, 2011, Villalba-Cabello petitioned an immigration judge who lowered her bond to $5,000.00. However, Villalba-Cabello remained in immigration custody until she was arrested on the criminal complaint warrant filed on July 1, 2011. Villalba-Cabello was promptly brought before a magistrate judge on the complaint the next business day, July 5, 2011.

As pointed out by the government, Villalba-Cabello was arrested pursuant to Section 1357(a)(2) on immigration charges and promptly brought before an immigration examination officer. While still in immigration custody, a criminal investigation continued with additional investigation in New York until a Deportation Officer sent a prosecution report to the U.S. Attorney's office on June 23, 2011. A week later, the criminal complaint was filed on July 1, 2011. The mandates of Section 1357(a)(4) are inapplicable in this case. Furthermore, there was no unreasonable delay under Rule 5(a) of the Federal Rules of Criminal Procedure in bringing Villalba-Cabello before a magistrate judge after her arrest

on the criminal complaint.  Cf. *United States v. Encarnacion*, 239 F. 3d 395, 399-400 (1st Cir. 2001).  Villalba-Cabello's motion to dismiss is frivolous and without merit, and should be denied.

### B. Motion to Suppress

Villalba-Cabello was advised of her *Miranda* rights when Officer Minze arrested her at Katana Summit in Columbus.  She invoked her rights and declined to speak with the deportation officer (Exhibit 1).  While en route to the Omaha ICE facility, Officer Minze asked Villalba-Cabello if she had children and if she needed to contact anyone regarding the care of her children in the event she were held overnight, inquiries characterized as welfare questions.  Apparently Villalba-Cabello stated she had children and was allowed to make a telephone call when she arrived in Omaha.  Villalba-Cabello called her ex-husband and made such arrangements.  Later, Officer Minze called Villalba-Cabello's ex-husband to verify that he would care for Villalba-Cabello's children, asked if the immigration bond would be posted, and asked about Villalba-Cabello's true name.  It was at that time, Officer Minze found out the defendant's true name.  Villalba-Cabello asserts her initial questioning by Officer Minze and Agent Hernandez occurred while she was in custody and without being provided her *Miranda* rights.  Villalba-Cabello asserts the identity information learned from her ex-husband was the fruit of the poisonous tree insofar as Villalba-Cabello was questioned about her children after she invoked her rights under *Miranda*, and that questioning led the officers to contact her ex-husband.

Villalba-Cabello was not in custody when she was questioned by Officer Minze and Agent Hernandez in the training room at Katana Summit in Columbus.  Villalba-Cabello was not under arrest at the time of this questioning.  Villalba-Cabello was quite confident when she maintained her identity as Carmen Robles.  Officer Minze testified Villalba-Cabello was free to leave until Agent Hernandez determined Villalba-Cabello was not from Puerto Rico as she claimed.  The deportation officers were dressed in civilian clothes with no firearms displayed.  The deportation officers not involved in asking Villalba-Cabello questions when at the Katana Summit training room remained at the rear of the room.  Utilizing the various

factors of *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990), the court finds Villalba-Cabello was not in custody during the initial interrogation.

While Villalba-Cabello invoked her right to silence after being advised of her *Miranda* rights, the questions put to Villalba-Cabello regarding her children did not constitute interrogation but were questions of basic biographical information designed to protect the welfare of her children.  See *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1039 (8th Cir. 2010); *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985).  Villalba-Cabello's telephone call to her ex-husband was not tainted by Officer Minze's questions to her about her children.  Officer Minze's discovery of the ex-husband's telephone number did not taint his subsequent telephone call to the ex-husband and the subsequent discovery of various information about Villalba-Cabello.  Villalba-Cabello's motion to suppress such information is without merit and should be denied.

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

Soledad Villalba-Cabello's motion to dismiss (Filing No. 20) be denied; and

Soledad Villalba-Cabello's motion to suppress (Filing No. 22) be denied.

### ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 9th day of November, 2011.

BY THE COURT:
 s/ Thomas D. Thalken
United States Magistrate Judge

---

[*]This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.